STATE *v.* KING.

[Cite as State v. King, 15 Ohio Misc. 361.]

(No. 21588—Decided March 3, 1966.)

Municipal Court of Bellefontaine.

*Mr. John D. West,* for plaintiff.
*Mr. Donald Dodd* and *Mr. Dwight I. Hurd,* for defendant.

SHIRK, J.   The defendant, David Vance King, was arrested on April 23, 1965, charged with unlawfully operating a motor vehicle, bearing farm license plates for purposes other than exclusive farm use, a violation of Section 4503.05, Revised Code.

Defendant was an employee of Kirby Hatcheries, Inc., of Urbana, Ohio, and, at the time of his arrest was driving a 1961 International quarter ton panel truck for Kirby, the owner of the truck.   The truck was being used to transport hatching eggs picked up from independent farms, approximately 26 or 27 in number and located within 100 miles from Urbana, Ohio, to a hatchery owned by Kirby.

Kirby purchases hatching eggs from farmers and the

eggs are transported from these farms to their hatchery by the truck that the defendant was driving. The eggs are hatched and baby chicks produced at the hatchery, and the chicks are then raised on the Kirby farm, or, in some cases, they are raised by local farmers for Kirby. After twenty weeks the chicks have developed into pullets and are sold to farmers to be used in the production of eggs. The truck that was driven by the defendant is used to transport the pullets to the purchasers. Some of the baby chicks are sold shortly after hatching to farmers who raise the chickens for the production of eggs. The truck is also used to deliver these chicks to purchasers.

The truck driven by the defendant was used solely in the transportation of the eggs to the hatchery, for transportation of the chicks to the Kirby farm, and for delivery of pullets and chicks from the hatchery or from the pullet farm to the purchasers.

In addition, Kirby owns a pullet farm adjacent to the hatchery on which many of the chicks produced at the hatchery are raised. The farm and hatchery are owned and operated by Kirby and considered an integrated operation for the raising of pullets. Eighty-one per cent of Kirby's fixed assets are represented by the farm and seventy per cent of net profits are realized on the farm. In contrast, the hatchery business, located in a rented building near Urbana, contains nineteen per cent of Kirby's fixed assets and accounts for thirty per cent of the net profits.

The history of the pullet industry is not unlike that of other farming operations which have changed considerably in the past 35-40 years. Prior to 1920, most baby chicks were hatched on the farms under hen·or in small incubators. Since the advent of forced air incubators in 1922, the hatching of eggs became a specialized operation in itself and hatcheries, such as the one owned by Kirby, sprang up throughout the farming area, of which there are approximately seventy in the state of Ohio today.

The state of Ohio contends that defendant's employer is engaged in a commercial enterprise and that the truck operated by defendant should have commercial registra-

tion. Defendant contends that the truck driven by defendant was a farm truck used exclusively in farm use and that the truck was owned, controlled and operated by and for a farmer as provided by Section 4503.04, Revised Code.

Section 4503.04, Revised Code, in so far as that section is pertinent to the questions involved, provides in part as follows:

"* * *

"(H) For each farm truck which is owned, controlled, or operated by one or more farmers exclusively in farm use as defined in this section, and not for commercial purposes, and provided that at least seventy-five per cent of such farm use is by or for the one or more owners, controllers, or operators of the farm in the operation of which a farm truck is used, the license tax is:

"* * *

" 'Farm truck' means a truck or bus used in the transportation from the farm products of the farm, including livestock and its products, poultry and its products, floricultural and horticultural products, and in the transportation to the farm of supplies for the farm, including tile, fence, and every other thing or commodity used in agricultural, floricultural, horticultural, livestock, and poultry production, and livestock, poultry, and other animals and things used for breeding, feeding, or other purposes connected with the operation of the farm or for the transportation of agricultural employees and used only in the transportation of such employees as are necessary in the operation of the farm. Such bus license plates shall be issued for a period of ninety days from the date of issue, for a fee of ten dollars, provided, such plates shall not be issued for more than any two ninety day periods, in any fiscal licensing year. Such use does not include the operation of trucks by commercial processors of agricultural products.

"* * *"

It has been pointed out on behalf of defendant that the limitation in Section 4503.04, Revised Code, to wit: "Such use does not include the operation of trucks by commercial processors of agricultural products," operates

only on the immediately precedent farm use, *i. e.*, the transportation of employees. A study of the history of this section shows this interpretation to be incorrect. The language pertaining to the transportation of employees was added to the section by amended house bill 620 of the 1956-57 General Assembly. The limitation itself was a part of this section prior to the above amendment and it is therefore assumed that the legislature intended such limitation to operate on all farm uses defined in the statute.

In order to determine if Kirby's truck is exempted under the statute, it would have to be established that it was used to transport farm products and supplies to and from the farm within the limitation that seventy-five per cent of such farm use is by or for the Kirby farm which is operated in conjunction with the hatchery.

It was the intent of the legislature, in enacting Section 4503.04, Revised Code, to exempt the farmer whose use of the highways is infrequent in transporting supplies and farm products to and from his farm. However, in addition thereto, the statute permits the owner of a truck licensed with farm truck license plates to transport, for compensation, farm products for a farm or farms *not* owned, controlled or operated by the owner of such truck, provided such use does not exceed 25% of the farm use of such truck.

Eggs, chickens and pullets in and by themselves, could hardly be termed anything but products of the farm. Therefore, the transportation of such items from the hatchery to the Kirby farm and from the Kirby farm to the hatchery, would fall within the statute and the exemption would be allowed. However, in addition thereto, Kirby uses their truck to transport eggs and pullets from various other farms in the area to the hatchery and to transport baby chicks and pullets from the hatchery to such other farms. Such additional operation would exclude Kirby's truck from the exemption allowed if Kirby is in fact a commercial processor or if the use of such truck in servicing the various other farms exceeds twenty-five per cent of the total farm use of such truck.

Defendant's employer testified that his truck was used

in transporting eggs from approximately 26 farms within a 100 mile area to the hatchery, for the transportation of eggs to the Kirby farm, and for the delivery of pullets and baby chicks from the hatchery or pullet farm to the purchaser. It is not conceivable that, under the circumstances, the transportation of the eggs, chicks and pullets, for or to the approximately 26 farms in the area, does not exceed twenty-five per cent of the use of the truck.

Defendant contends that, since a farm is operated in conjunction with the hatchery, Kirby is a farmer and the truck is owned, controlled and operated by and for a farmer exclusively in farm use. Therefore, since the truck was operated solely for Kirby's benefit, the seventy-five per cent limitation was satisfied. This interpretation would defeat the purpose of the statute and permit an avoidance of the seventy-five per cent limitation which appears clear and unambiguous. The only reasonable interpretation would be that Kirby's truck may be licensed as a farm truck when such truck is used for transporting the eggs, chicks and pullets to the Kirby farm, as well as to other farms, providing seventy-five per cent of the use of such truck is for the farm owned, controlled or operated by the licensee, to wit: the Kirby farm.

In view of the foregoing, I find that the operation of the Kirby truck, in servicing such other farms in the area not owned by Kirby, exceeds twenty-five per cent of the total farm use of such truck. Using the language of the statute, I find that less than seventy-five per cent of such farm use is by or for the Kirby farm in the operation in which the Kirby truck is used. Defendant, therefore, is guilty of violating Section 4503.05, Revised Code, in unlawfully operating a motor vehicle bearing farm license plates for purposes other than exclusive farm use as defined in Section 4503.04, Revised Code.